UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| RICHARD MCCRYSTAL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 07-434-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KENTUCKY STATE POLICE, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Richard McCrystal ("McCrystal") claims that on or about December 16, 2006, he was beaten by Kentucky State Police ("KSP") officers Mark Ridener and James Moore in connection with an arrest occurring earlier on that date. McCrystal filed this action on December 16, 2007, against these two officers, asserting claims against them in their individual and official capacities. McCrystal also asserted claims against an unknown supervisor in his or her individual and official capacity.

On August 6, 2008, KSP Major Jack Miniard moved the Court to dismiss the supervisory claims. Because the federal claims asserted against Miniard in his official capacity are barred by the Eleventh Amendment to the United States Constitution, and because state law claims asserted against Miniard in his official capacity are barred by governmental immunity, Miniard's motion to dismiss will be granted, in part. However, at this time, his motion will be denied with respect to the claims asserted against him in his individual capacity.

-1-

I.   **Relevant Facts**[1]

McCrystal claims that, on or about December 16, 2006, he was arrested due to an altercation that occurred two night earlier involving Jeff Wilson, the son-in-law of a KSP trooper. After being handcuffed and placed in Defendant Moore's cruiser, McCrystal asserts that he was taken to a closed campground near Corbin, Kentucky, taken from the cruiser, questioned and beaten.

In Count 1 of his Verified Complaint, McCrystal asserts that,

> 28. As a direct and proximate result of the . . . unlawful and malicious physical abuse of Plaintiff by Ridener and Moore under the color [of] law and under their authority as Kentucky State Police Officers, the Plaintiff suffered grievous bodily harm and was deprived of his right to be secure in his person against unreasonable searches and seizures of his person and his right to be free from excessive force, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. Section 1983.
>
> *   *   *
>
> 32. Unknown Supervisor to Moore and Ridener was at all times relevant the supervisor with the Kentucky State Police with oversight responsibility for Moore and Ridener. Unknown Supervisor was responsible for training, instruction, supervision and discipline of Moore and Ridener who beat the Plaintiff.
>
> 33. It is believed that the Kentucky State Police and Unknown Supervisor received complaints about the conduct of either Moore or Ridener, and knew about past complaint, aberrant behavior, disciplinary infractions, or had knowledge that Moore or Ridener posed a pervasive and unreasonable risk of harm to Plaintiff.
>
> 34. It is believed that the Kentucky State Police and the Unknown Supervisor failed to take preventative and remedial measures to guard against the brutality the Plaintiff suffered. If the Kentucky State Police and Unknown Supervisor had taken such remedial action, the beating of the Plaintiff would not have occurred.

---

[1] Because Miniard's motion is filed pursuant to Rule 12 of the Federal Rules of Civil Procedure, the Court's summary of relevant facts will be taken from Plaintiff's Verified Complaint [Record No. 1].

>   35. Acting under color of law and pursuant to official policy, practice, or custom, Defendants Kentucky State Police[2] and Unknown Supervisor intentionally, knowingly, and recklessly failed to instruct, supervise, control, and discipline, on a continuing basis, defendants Moore and Ridener in their duties to refrain from unlawfully and maliciously assaulting and beating citizens and otherwise using unreasonable and excessive force before, during, or after making an arrest. Amounting to a deliberate indifference to the constitutionally protected rights of the Plaintiff. [sic]

[Record No. 1; Complaint] In Count III, McCrystal asserts state law claims of assault and battery arising from the alleged unlawful arrest and beating. Finally, in Count IV, he asserts a state law claim for outrageous conduct.

## II.     Miniard's Motion to Dismiss

Although McCrystal has not sought to amend his Verified Complaint to name the unidentified supervisor of Defendants Ridener and Moore, on August 6, 2008, KSP Major Jack Miniard ("Miniard") moved to dismiss the claims asserted against him in his individual and official capacities. According to Miniard, prior to being promoted to his present position and rank of Major, he was formerly assigned as Post Commander for KSP Post 11 in London, Kentucky. He asserts that, on or about August 1, 2008, the Plaintiff left a Summons for him at KSP Post 11, but that prior to that date, he had no knowledge of this action and the Plaintiff had made no prior attempts to serve him with process. Miniard states that he received Summons at his Frankfort office on August 4, 2008 – more than 120 days after the Plaintiff's filing of his Verified Complaint. As a result, he argues that the claims asserted against him should be dismissed under Rule 4(m) of the Federal Rules of Civil Procedure. Additionally, he contends

---

[2]     For the reasons outlined in this Memorandum Opinion and Order, the KSP will be subject to dismissal following service and the filing of a proper motion under Rule 12 of the Federal Rules of Civil Procedure.

that the official capacity claims should be dismissed as being barred by the Eleventh Amendment to the United States Constitution and because he possesses governmental immunity which bars the Plaintiff's state law claims. [*See* Record No. 8; Motion to Dismiss]

### A. The Standard of Review

Miniard's substantive arguments are made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure which allows a defendant to move for dismissal of all or part of a complaint if it fails to state a claim upon which relief may be granted. When analyzing the sufficiency of a complaint, the Court applies the principle that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Lillard v. Shelby County Board of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996). Further, courts must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Lillard*, 76 F.3d at 724 (quoting *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994)).

### B. The Plaintiffs' Federal Claims (Official Capacity)

Miniard has moved the Court to dismiss the federal claims asserted against him because, in his official capacity, he is entitled to Eleventh Amendment immunity. As the Defendant correctly notes, absent consent, state entities possess Eleventh Amendment immunity from actions asserting a violation of federal civil rights. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). And because the KSP is an arm of the executive branch of the Commonwealth of Kentucky, such immunity is afforded to it. Likewise, employees of the KSP

sued in their official capacities are entitled to the same Eleventh Amendment protection from federal claims. *See Turker v. Ohio Dept. of Rehabilitation and Corrections*, 157 F.3d 453, 456 (6th Cir. 1998) (under the Eleventh Amendment, a plaintiff cannot sue state employees in their official capacities for monetary damages), and *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1990).

Here, there is no dispute regarding the facts relevant to the Eleventh Amendment inquiry. The Plaintiff has alleged that Defendant Moore and Ridener and their unknown supervisor, Defendant Miniard, were employed in official capacities by the KSP at the time of the incident giving rise to this action. Further, there is no dispute that the KSP is an arm of the executive branch of the Commonwealth of Kentucky. See KRS § 16.060. As a statutorily-created department within the Justice and Public Safety Cabinet, the KSP is tasked with statewide law enforcement jurisdiction. Further, its budget is funded by the Kentucky General Assembly. KRS § 16.050(1). Thus, the KSP is an arm of the central state government of the Commonwealth of Kentucky.

Because the KSP has not waived its sovereign immunity for claims such as those being asserted by the Plaintiffs, it is not amenable to damage claims arising from alleged violations of federal civil rights. As outlined above, Defendant Miniard, when sued in his official capacity for monetary damages under 42 U.S.C. § 1983, cannot be held liable for such damages. Accordingly, Defendant Miniard's motion to dismiss the federal claims asserted against him in his official capacity will be granted.

### C.    The Plaintiffs' State Law Claims (Official Capacity)

In addition to asserting a federal claim under 42 U.S.C. § 1983 for alleged unreasonable and excessive force, the Plaintiffs have asserted state law claims against the Defendants for assault and battery (Count III), and outrageous conduct (Count IV). To the extent that these state law claims have been asserted against Defendant Miniard in his official capacity, he has moved the Court to dismiss them under a claim of official/governmental immunity.[3]

Under Kentucky law, agencies of the state possess governmental immunity from suit when an action is premised on the agency's performance of a governmental (as opposed to a proprietary) function. *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001). Here, there is no dispute that the law enforcement functions of the KSP and its employees are governmental – not proprietary. As the Supreme Court of Kentucky explained in *Yanero, supra,* at 517-519, governmental and sovereign immunity are separate and distinct concepts that have been used interchangeably in a number of Kentucky appellate decisions.

> "Governmental immunity" is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on a government agency. . . . The premise is that courts should not be called upon to pass judgment on policy decisions made by members of coordinate branches of government in the context of tort actions, because such actions furnish an inadequate crucible for testing the merits of social, political, or economy policy. . . . Thus, a state agency is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary function.

*Yanero, supra,* at 519 (citations omitted). Application of governmental immunity extends to employees acting in their official capacities. *Id.* at 521-22. *See also*, *Autry v. Western Kentucky*

---

[3] Governmental immunity is absolute (as opposed to qualified) and extends to the state agency or entity. When this immunity is extended to employees of state agencies or entities while acting in their official capacities, such immunity is often classified as official immunity. This immunity extended to employees is also absolute. When sued in their individual capacities, such employees may also claim qualified immunity.

*University*, 219 S.W.3d 713, 717 (Ky. 2007) ("If a state agency is deemed to have governmental immunity, its officers or employees have official immunity when they are sued in their official or representative capacity.").

In addition to the protections provided to state agencies and employees performing governmental functions, some employees are also entitled to "official immunity." Once again, the Supreme Court of Kentucky's opinion in *Yanero v. Davis, supra*, provides further guidance in explaining this concept. As the court noted,

> "Official immunity" is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed. *Salyer v. Patrick*, 874 F.2d. 374 (6th Cir. 1989). Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative [*i.e.*, official] capacity, in which event his/her actions are included under the umbrella of sovereign immunity . . . . Similarly, when an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled. . . . But when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protections from damages liability for good faith judgment calls made in a legally uncertain environment.

*Yanero*, *supra*, at 521-22. *See also, Jones v. Lathram,* 150 S.W.3d 50, 53 (Ky. 2004).

In the event a party seeks dismissal of claims asserted against him in his individual capacity, the qualified immunity analysis requires consideration of a number of factors, including whether the actions were: (1) discretionary or ministerial; (2) taken in good faith; and (3) within the scope of the employee's authority. *Yanero,* at 522. However, such a factual analysis is not required where the focus is on claims asserted against a defendant in his or her *official* capacity.

The allegations contained in the Verified Complaint and summarized above raise factual issues concerning whether Defendant Miniard had knowledge that either Moore or Ridener posed a "pervasive and unreasonable risk of harm" to Plaintiff. Therefore, the Court cannot conclude that, under Rule 12, dismissal would be appropriate at this time under a qualified immunity argument for claims asserted against Defendant Miniard in his individual capacity. Thus, dismissal of the state law claims will be limited to those which have been asserted against Defendant Miniard in his official capacity. Miniard is entitled to the protections provided by official/governmental immunity with respect to the claims asserted against him in his official capacity because, at the time alleged by the Plaintiff, he was employed as a supervisor by the Kentucky State Police and performing a governmental (as opposed to proprietary) function.

### D.     Individual Capacity Claims

Defendant Miniard has also argued that the claims asserted against him should be dismissed based on the Plaintiff's failure to timely serve summons pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Under this rule,

> [i]f service of summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. . . .

Rule 4(m), Fed. R. Civ. P.

In the present case, the Plaintiff failed to comply with this provision with respect to Defendant Miniard, the previously unknown supervisor of Defendants Moore and Ridener. However, by Order dated August 5, 2008, the Court extended the time within which the Plaintiff

could complete service over the Defendants. As a result of this Order (filed one day before the filing of Defendant Miniard's motion to dismiss), the Court will not dismiss the claims asserted against Defendant Miniard in his individual capacity under Rule 4(m) of the Federal Rules of Civil Procedure.

### III.  Conclusion

For the reasons discussed herein, it is

**ORDERED** that Defendant Jack Miniard's motion to dismiss [Record No. 8] the claims asserted against him in his official capacity is **GRANTED**. The motion to dismiss [Record No. 8] the claims asserted against this Defendant in his individual capacity is **DENIED**.

This 8th day of September, 2008.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge