UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| RICHARD MCCRYSTAL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 07-434-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KENTUCKY STATE POLICE, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Richard McCrystal ("McCrystal") claims that, on or about December 16, 2006, he was beaten by Kentucky State Police ("KSP") officers Mark Ridener ("Ridener") and James Moore ("Moore") in connection with an arrest occurring earlier on that date. McCrystal filed this action on December 16, 2007, asserting claims against Ridener and Moore in their individual and official capacities. Ridener now moves the Court to dismiss the claims against him in his official capacity on the grounds that these claims are barred by the Eleventh Amendment and governmental immunity. [Record No. 21] In addition, Ridener moves the Court to dismiss the claims against him in his individual capacity because of errors in the service of process. [*Id.*]

For the reasons discussed below, this Court will grant Ridener's motion to dismiss the claims against him in his official capacity but deny the motion as it relates to the claims asserted against him individually.

-1-

I.      RELEVANT FACTS[1]

McCrystal claims that, on or about December 16, 2006, he was arrested by Ridener and

Moore because of an altercation that occurred two nights earlier involving the son-in-law of

another KSP officer.  After being handcuffed and placed in Moore's cruiser, McCrystal alleges

that he was taken to a secluded area of a closed campground near Corbin, Kentucky.  Upon

arrival, McCrystal claims that Moore and Ridener stopped and removed him from the vehicle

in which he had been placed.  McCrystal's Verified Complaint describes the subsequent

sequence of events as follows:

> 15.     Plaintiff exited the cruiser and leaned up against the vehicle.
>
> 16.     Both [Moore and Ridener] began to question the Plaintiff about the underlying events surrounding his arrest.
>
> 17.     Ridener began to berate the Plaintiff and informed the Plaintiff that Ridener was going to "find out just how really bad you are."
>
> 18.     When Plaintiff refused to engage in a physical confrontation Ridener began to slap the Plaintiff about the face and head.
>
> 19.     Ridener repeated this sequence of events trying to cause the Plaintiff to fight back.
>
> 20.     When Ridener surmised the Plaintiff would not fight back, he told the Plaintiff, "I knew you were a p _ _ _ y."
>
> 21.     At some point after Ridener stopped slapping the Plaintiff, Moore used his forearm to shove the Plaintiff to the ground where both Moore and Ridener began to stomp and kick the Plaintiff about his legs, back and buttocks while the Plaintiff was lying defenseless on the ground.

---

1.      When considering a motion to dismiss, all facts must be viewed in the light most favorable to the nonmoving party.  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).  Thus, the summary of facts is taken from the Plaintiff's Verified Complaint.  [Record No. 1]

22. At some point the Plaintiff was struck in the side with an unknown object, possibly a nightstick, knocking the breath out of the Plaintiff[. While] trying to recover his breath the [Plaintiff] was sprayed in the face at close range with pepper spray causing further severe pain and anguish.

23. Plaintiff was ordered to get up or he would be beaten and kicked again.

24. Plaintiff stood up and Ridener punched the Plaintiff in the face and ear causing his nose to bleed and swell and further inflict severe pain. Ridener threatened to kill Plaintiff if he returned to Laurel County after severing his time.

25. Ridener then handcuffed the Plaintiff and placed him in Ridener's cruiser and cautioned Plaintiff not to get any blood in his cruiser.

26. Ridener then proceeded to [the] Kentucky State Police Post at London, Kentucky, where Plaintiff remained until he was taken and lodged at the Laurel County Detention Center for the assault of Jeff Wilson, son-in-law to Dallas Eubanks, a Kentucky State Trooper.

[Record No. 1, p. 2–3]

Count I of McCrystal's Verified Complaint asserts that Ridener deprived him "of his right to be secure in his person against unreasonable searches and seizures of his person and his right to be free from excessive force in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. Section 1983." In Count III, McCrystal asserts state law assault and battery claims arising from the alleged unlawful arrest and beating. Finally, in Count IV, he asserts a state law claim for outrageous conduct. [*Id.*, p. 3–5]

## II. PROCEDURAL HISTORY

McCrystal filed this action on December 16, 2007 – the one year anniversary date of the alleged incident. [Record No. 1] The record indicates that, while Summons were issued by the Clerk of Court on the date the Complaint was filed, they were not picked-up at that time. As a

result, on December 20, 2007, the Summons issued by the Clerk were mailed to McCrystal's counsel.

On August 1, 2008, McCrystal moved the Court for an extension of time to serve the Defendants pursuant to FED. R. CIV. P. 4(m).  [Record No. 3]  As grounds for this motion, counsel asserted that Defendants Moore and Ridener were indicted in state court on the underlying claims and that he had made several unsuccessful attempts to locate them and complete service.  This motion was granted on August 5, 2008, and the McCrystal was given thirty days to complete service of process over the Defendants.  [Record No. 7]  Summons filed in the record indicates that Defendant Ridener was served with process on August 1, 2008, by Susan Gipson, a person apparently employed as a legal assistant by the McCrystal's attorney. [Record Nos. 4 & 5]

On October 16, 2008, Ridener filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6).  Ridener alleges  that the Eleventh Amendment bars the federal claims, and that governmental/official immunity bars the state claims, asserted against him in his official capacity.  In addition, he claims that service of process errors warrant the dismissal of all claims against him in his individual capacity.  [Record No. 21]  McCrystal filed his response to the motion to dismiss on October 26, 2008, arguing that the Court should deny Ridener's motion to dismiss in its entirety.  [Record No. 23]

### III.    STANDARD OF REVIEW

Dismissal for failure to state a claim under FED. R. CIV. P. 12(b)(6) is only appropriate "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *Moon v. Harrison*

-4-

*Piping Supply*, 456 F.3d 719, 723 (6th Cir. 2006).  When analyzing the sufficiency of a complaint, the Court must construe the complaint in the light most favorable to the nonmoving party, and "accept as true all factual allegations and permissible inferences therein." *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007); *Moon*, 456 F.3d at 723.  A complaint survives a motion to dismiss if it "contains either direct or inferential allegations with respect to material elements necessary to sustain a recovery under some viable legal theory."  *Moon*, 456 F.3d at 723.

**IV.    ANALYSIS**

**A.    The Plaintiff's Federal Claims (Official Capacity)[2]**

Ridener asserts that Eleventh Amendment immunity prohibits McCrystal from suing him in his official capacity pursuant to 42 U.S.C. § 1983 ("§ 1983").  Thus, Ridener moves the court to dismiss the federal claims asserted against him in his official capacity. [Record No. 21, p. 4]  Generally, § 1983 provides litigants with a federal forum to remedy many deprivations of civil liberties. *Wills v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  However, state entities possess Eleventh Amendment immunity and, absent a wavier of this immunity, cannot be sued under § 1983.  *Id.*

As an arm of the executive branch of the Commonwealth of Kentucky, the KSP is entitled to Eleventh Amendment immunity.  Likewise, employees of the KSP sued in their official capacities are entitled to the same Eleventh Amendment protection from federal claims.  *See*

---

2.    This Court previously addressed this issue as it pertained to KSP Major Jack Miniard.  [Record No. 14] Ridener submits that "for the same reasons addressed in the Court's prior Order that he should be granted Eleventh Amendment/sovereign immunity from Plaintiff's federal claims because such claims are based on Ridener's former official status as a sworn officer with the Kentucky State Police."  [Record No. 21, p. 4]

*Will*, 491 U.S. at 71; *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (state employees sued in their official capacities cannot be held liable for money damages under § 1983).

Here, the facts relevant to the Eleventh Amendment inquiry are undisputed. McCrystal does not dispute that the KSP is a state entity. The KSP is a statutorily-created department within the Justice and Public Safety Cabinet tasked with statewide law enforcement jurisdiction. *See* K.R.S. § 16.060. Further, its budget is funded by the Kentucky General Assembly. K.R.S. § 16.050(1). Thus, the KSP is unquestionably an arm of the executive branch of the Kentucky state government. Additionally, McCrystal acknowledges that, at the time of the incident giving rise to this action, Ridener was officially employed by the KSP. [Record No. 1, p. 3] Thus, McCrystal's Verified Complaint establishes that at the time of the incident in question Ridener was employed in an official capacity by a state entity.

Since the KSP has not waived its sovereign immunity for claims such as those asserted by McCrystal, it cannot be held liable for monetary damages arising from alleged federal civil rights violations. As outlined above, when sued in his official capacity under § 1983, Ridener also cannot be held liable for monetary damages. Accordingly, Defendant Mark Ridener's motion to dismiss the federal claims asserted against him in his official capacity will be granted.

### B.   The Plaintiff's State Law Claims (Official Capacity)[3]

---

3.      As was the case with the federal claims, this Court previously addressed this issue as it pertained to KSP Major Jack Miniard. [Record No. 14] Ridener contends that he is cloaked with governmental immunity for the same reasons the Court found that governmental immunity barred McCrystal's state law claims against Miniard.

In addition to asserting a federal claim under § 1983 for alleged unreasonable and excessive force, McCrystal asserts state law claims against Ridener for assault and battery (Count III), and outrageous conduct (Count IV). To the extent that these state law claims have been asserted against Ridener in his official capacity, he has moved the Court to dismiss them under a claim of official/governmental immunity.[4]

Under Kentucky law, state agencies possess governmental immunity from suit when an action is premised on the agency's performance of a governmental (as opposed to a proprietary) function. *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001). Here, there is no dispute that the law enforcement functions of the KSP and its employees are governmental – not proprietary. As the Supreme Court of Kentucky explained in *Yanero,* 65 S.W.3d at 517–519, governmental and sovereign immunity are separate and distinct concepts that have been used interchangeably in a number of Kentucky appellate decisions.

> "Governmental immunity" is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on a government agency. . . . The premise is that courts should not be called upon to pass judgment on policy decisions made by members of coordinate branches of government in the context of tort actions, because such actions furnish an inadequate crucible for testing the merits of social, political, or economy policy. . . . Thus, a state agency is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary function.

*Yanero*, 65 S.W.3d at 519 (citations omitted).

A suit against a governmental officer in his official capacity is the same as a suit against the government agency for whom the officer works. *McMillian v. Monroe County*, 520 U.S.

---

4.      Governmental immunity is absolute (as opposed to qualified) and extends to the state agency or entity. When this immunity is extended to employees of state agencies or entities while acting in their official capacities, such immunity is often classified as official immunity. This immunity extended to employees is also absolute. When sued in their individual capacities, such employees may also claim qualified immunity.

781, 785 n.2 (1997) (citations omitted).  This is because a victory in such an official capacity suit imposes liability not on the officer, but on the government agency itself.  *Id.*  Accordingly, under Kentucky law, governmental immunity extends to employees acting in their official capacities. *Yanero*, 65 S.W.3d at 521–22.  *See also*, *Autry v. Western Kentucky University*, 219 S.W.3d 713, 717 (Ky. 2007) ("If a state agency is deemed to have governmental immunity, its officers or employees have official immunity when they are sued in their official or representative capacity.").

In addition to the protections provided to state agencies and employees performing governmental functions, some employees are also entitled to "official immunity."  Once again, the Supreme Court of Kentucky's opinion in *Yanero v. Davis, supra*, provides further guidance in explaining this concept.  As the court noted,

> "Official immunity" is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions.  It rests not on the status or title of the officer or employee, but on the function performed.  *Salyer v. Patrick*, 874 F.2d. 374 (6th Cir. 1989).  Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative [*i.e.*, official] capacity, in which event his/her actions are included under the umbrella of sovereign immunity . . . .  Similarly, when an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled. . . .

*Yanero*, 65 S.W.3d at 521–22.  *See also, Jones v. Lathram,* 150 S.W.3d 50, 53 (Ky. 2004).

Ridener is entitled to the protections provided by official/governmental immunity with respect to the state law claims asserted against him in his official capacity because, at the time alleged by McCrystal, he was employed in an official capacity by the KSP.  As a state agency, the KSP is cloaked with official/governmental immunity.  And under Kentucky law, this

-8-

immunity extends to employees of state agencies when they are sued in their official capacity. Accordingly, Defendant Mark Ridener's motion to dismiss the state claims asserted against him in his official capacity will be granted.

### C.   Individual Capacity Claims

Ridener also argued that the claims asserted against him should be dismissed based on the McCrystal's failure to serve process under Rule 4(m) of the Federal Rules of Civil Procedure. Under this rule,

> [i]f service of summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.  . . .

FED. R. CIV. P. 4(m)

In the present case, McCrystal failed to comply with this provision with respect to the summons served on Ridener and the other Defendants.  However, by Order dated August 5, 2008, the Court extended the time within which the Plaintiff could complete service over the Defendants.[5]  [Record No. 7]  Ridener was properly served within this extended time period. [Record No. 5]  As a result of this Order, the Court will not dismiss the claims asserted against Ridener in his individual capacity under FED. R. CIV. P. 4(m).[6]

---

5.      McCrystal's motion for extension of time was filed on August 1, 2008, and was granted on August 5, 2008.  A district court has wide discretion to enlarge the time for service even in the absence of a showing of good cause. *See Henderson v. United States*, 517 U.S. 654, 658 n.5 (1996); Advisory Committee's Notes to on the 1993 Amendment to FED. R. CIV. PRO. 4.

6.      Although not addressed in his motion, dismissal of the claims against Ridener in his individual capacity based on qualified immunity would be inappropriate in this case.  Based on the facts as alleged in the Verified Complaint, this Court believes Ridener could not show that he was acting within the scope of his authority, nor could he show his actions were in good faith. *See Yanero*, 65 S.W.3d at 522.

-9-

**V.      CONCLUSION**

For the reasons discussed herein, it is

**ORDERED** that Defendant Mark Ridener's motion to dismiss [Record No. 21] the claims asserted against him in his official capacity is **GRANTED**.  The motion to dismiss [Record No. 21] the claims asserted against this Defendant in his individual capacity is **DENIED**.

It is further **ORDERED** that Plaintiff's Motion for Leave to Amend Proof of Service [Record No. 22] is **GRANTED**.

This 20th day of November, 2008.

Signed By:

_Danny C. Reeves_   DCR

**United States District Judge**

-10-